UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

– against –

RAFAEL DELACRUZ,

Defendant.

OPINION & ORDER

18 Cr. 106 (ER)

Ramos, D.J.:

Rafael Delacruz is currently serving a 60-month sentence, which Judge Katherine B. Forrest imposed on August 17, 2018, at FCI Danbury, a low security prison in Connecticut, and is scheduled to finish his sentence on August 30, 2022. Before the Court is his motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), seeking a reduction of his sentence by reducing his sentence to time served or, in the alternative, releasing him to a residential reentry center for the remainder of his sentence, which would be followed by three years of supervised release. *See* Doc. 33. The Government opposes the motion. For the reasons set forth below, Delacruz's motion is DENIED.

I.   BACKGROUND

A.  Prior Proceedings

On March 8, 2018, Delacruz pled guilty to an Information charging him with one count of conspiracy to distribute heroin and cocaine in violation of 21 U.S.C. § 846 and 841(b)(1)(C). Doc. 11. Delacruz sold cocaine and heroin to a confidential source on four occasions over a five-month period between June 2017 and November 2017. Doc. 34 at 10. Throughout 2017, Delacruz regularly sold cocaine, totaling approximately 4 kilograms, and approximately 50 grams of heroin. Doc. 37 at 1.

On August 17, 2018, Judge Forrest sentenced Delacruz to 60 months in prison. Doc. 26. Judge Forrest noted that he was by no means a "small-time drug dealer," nor

was he on the "biggest scale." Doc. 27 at Tr. 17:24–25, 20:6–8. She also recognized that Delacruz was making drug sales regularly over time. *Id.* at Tr. 21:21–22. She further emphasized that "this was by no means [his] first encounter with the criminal justice system," referencing Delacruz's prior arrests. *Id.* at Tr. 21:25–22:3. In considering Delacruz's criminal history, Judge Forrest acknowledged that while his criminal history category overstated the seriousness of his recidivism, it did not overstate, however, that he was a recidivist. *Id.* at Tr. 24:15–17. She recognized that while Delacruz had numerous prior arrests and convictions, she would eliminate the marijuana convictions from consideration. *Id.* at Tr. 20:10–15, 22:2–3, 24:1–14.

Furthermore, Judge Forrest acknowledged Delacruz's level of family support and the medical needs of his daughter. *Id.* at Tr. 24:23–25:2, 25:10–13. Nevertheless, she took into consideration the fact that Delacruz's ex-wife was the primary caretaker and that he committed the underlying crime when his daughter had already been born and already had her medical condition. *Id.* at Tr. 22:25–23:2, 25:3–25.

In imposing the sentence, Judge Forrest explained that the 60-month period was "necessary for personal deterrence," "incapacitation [ ] to keep [him] from dealing drugs," and "recognition of the seriousness of the offense and to promote respect for the law." *Id.* at Tr. 26:6–16. Finally, Judge Forrest recommended that he be placed in any available drug treatment programs by the Bureau of Prisons ("BOP"), and required Delacruz to participate in a program for substance abuse during supervised release. *Id.* at Tr. 27:10–13, 29:12–14.

On June 9, 2020, Delacruz was released from FCI Danbury to home confinement. Doc. 34 at 5. The basis for the furlough was, in part, that Delacruz was vulnerable to COVID-19 due to his having high blood pressure, being borderline diabetic, being obese, and his age (40 years old). *Id.* During furlough, Delacruz lived with his mother and brother, had no new arrests, and maintained employment at two part-time jobs. *Id.* He was required to report to a halfway house once every two weeks for drug testing. *Id.* at 7.

During this eight-month period, Delacruz had several sanctions, one for testing positive for drugs and one for testing positive for cocaine and alcohol. *Id.* at 6.[1] Thereafter, he was remanded on January 22, 2021. Doc. 37 at 1. Following his remand, Delacruz was sanctioned for smoking in the shower on September 19, 2021. *Id.*

### B. The Instant Application

Delacruz first submitted an application for compassionate release with MDC Brooklyn, where he was then detained, on May 14, 2021. Doc. 33-1, Ex. A. Delacruz was then transferred from MDC Brooklyn to FCI Danbury. Doc. 34 at 4. On July 10, 2021, Delacruz filed a request for compassionate release with FCI Danbury, where he is currently detained. Doc. 33-1, Ex. B. This request was denied on July 22, 2021. Doc. 33-1, Ex. C. Having exhausted his administrative remedies, Delacruz filed a motion before the Court dated October 8, 2021, seeking compassionate release based on the risks posed by COVID-19 given his health conditions and his prior release to home confinement. Doc. 33.

## II.   LEGAL STANDARD

### 18 U.S.C. § 3582

Although a court may not normally "modify a term of imprisonment once it has been imposed," there are certain limited exceptions, including "compassionate release." *See United States v. Roberts*, No. 18 Cr. 528 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020) (internal quotation marks and citation omitted). Under 18 U.S.C. § 3582, a court may reduce a prisoner's sentence when it finds that there are "extraordinary and compelling reasons" that warrant such a reduction, but one of two conditions must first occur: Either the BOP Director may move the court to release the prisoner; or, alternatively, the prisoner himself may move the court, but only after he has fully exhausted all administrative rights. *See* 18 U.S.C. § 3582(c)(1)(A).

---

[1] The Government also references a December 11, 2020 sanction for being in an unauthorized area of the residential reentry center. Doc. 37 at 1.

3

Prior to the First Step Act, sole authority rested with the BOP to determine what reasons, for purposes of compassionate release, are "extraordinary and compelling." *See* U.S.S.G. § 1B1.13 ("BOP Policy Statement"), Application Note 1(D). However, the Second Circuit in *United States v. Brooker* recently determined that "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *See* 976 F.3d 228, 237 (2d Cir. 2020).

The BOP Policy Statement includes as an "extraordinary and compelling" reason the existence of "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. 1(A)(ii)(I). It also permits the Court to consider whether the incarcerated person "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.* at § 1B1.13(2).

If the sentencing court finds that "extraordinary and compelling reasons" exist, it "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed; and the need to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a).

### III.   DISCUSSION

#### A. Extraordinary and Compelling Circumstances

*First*, Delacruz argues that COVID-19 poses an extraordinary risk to his health in light of his serious health conditions, including his weight, hypertension, borderline

4

diabetes, and age (41 years old).[2]  According to Delacruz's medical records, which were filed under seal, Delacruz has a BMI of ▇, and is therefore considered severely obese by the Centers for Disease Control and Prevention ("CDC").  Doc. 33-1, Ex. F at 1.  Delacruz was also diagnosed with prediabetes and hypertension.  *Id.* at 1, 4.

The CDC has stated that having either type 1 or type 2 diabetes, hypertension, and obesity can make one more likely to get very sick from COVID-19.  *See* Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited April 6, 2022).  Delacruz's health conditions make him more vulnerable to COVID-19.  His age, however, does not place him at increased risk of severe illness from COVID-19.  *See, e.g.*, *United States v. Peña*, No. 9 Cr. 341 (VM), 2020 WL 7408992, at *6 (S.D.N.Y. Dec. 17, 2020) (denying compassionate release to defendant whose age of 58 years old did not put him in the "greatest risk" age category per CDC guidance); *see also* Increased Risk of Severe Illness from COVID-19, CDC, https://www.cdc.gov/aging/covid19/covid19-older-adults.html (last visited April 7, 2022).

Courts consider whether the facility is able to provide appropriate care and management for the condition.  *See, e.g.*, *United States v. Sattar*, 467 F. Supp. 3d 152, 155–56 (S.D.N.Y. 2020) (noting that there was no evidence that defendant's facility was unable to treat his high blood pressure).  Here, while Delacruz's reports about the deteriorating conditions at FCI Danbury, such as being forced to wear the same clothing and underwear for several days and a nurse informing him that she would not fill his medication, are concerning, Doc. 34 at 14, Doc. 38, Ex. H at 1, Delacruz's medical records for March 25, 2021 and June 10, 2021 indicate that he is receiving regular medical check-ups, lab work, and prescription medication.  Doc. 33-1, Ex. F.[3]  Delacruz

---

[2] The Government does not dispute that Delacruz has the health conditions asserted in his motion.

[3] In his October 10, 2021 letter to defense counsel, Delacruz notes that although he was denied his medication, he had it in his possession.  Doc. 38, Ex. H at 1.

5

also does not identify any particular treatment that is not available to him. *See, e.g.*, *United States v. Jones*, No. 17 Cr. 214 (CM), 2021 WL 4120622, at *3 (S.D.N.Y. Sept. 9, 2021) (denying compassionate release where individual with worsening diabetes had routine check-ups and medication and failed to identify any unavailable treatment).

To be clear, the Court has no doubt that Delacruz's health conditions are serious. However, he has not shown that FCI Danbury is unable to provide him with necessary care, or that he otherwise is unable to care for himself in the prison environment. In fact, during a medical evaluation on June 10, 2021, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Doc. 33-1, Ex. F at 4. Indeed, this conclusion is consistent with other decisions regarding individuals with similar diagnoses. *See, e.g.*, *United States v. Gomez*, No. 15 Cr. 348 (PGG), 2021 WL 4150966, at *2–4 (S.D.N.Y. Sept. 13, 2021) (denying compassionate release where defendant was obese and diagnosed with hypertension and type 2 diabetes); *Sattar*, 467 F. Supp. 3d at 155–56 (denying compassionate release to 60-year old defendant with high blood pressure, among other health conditions, when he had not shown that facility was unable to provide care).

The Government further notes that Delacruz has been fully vaccinated against COVID-19 as of May 13, 2021. Doc. 33-1, Ex. C at 1. Access to an approved COVID-19 vaccine generally counsels against compassionate release based on COVID risk, due to the strong evidence of the effectiveness of each of the vaccines. *See, e.g.*, *Gomez*, 2021 WL 4150966, at *2–4 (finding that although the defendant's obesity, type 2 diabetes, and hypertension increased his risk of severe illness, the fact that he is fully vaccinated makes the risk that he will contract COVID-19 and become seriously ill extremely small); *Jones*, 2021 WL 4120622, at *2–3 (denying compassionate release where defendant was diagnosed with obesity, type 2 diabetes, and hypertension and received the vaccine); *United States v. Kosic*, 18 Cr. 30 (PAC), 2021 WL 1026498, at *2 (S.D.N.Y. Mar. 17, 2021) (noting that vaccination can mitigate an inmate's heightened

risk from COVID-19 such that it is no longer extraordinary and compelling). Accordingly, this factor also weighs against compassionate release.[4]

*Second*, Delacruz also bases his motion on his prior release to home confinement. He notes that he was not given adequate support during his furlough. Specifically, rather than living at a halfway house or residential reentry center, he was directed to live at home, where a relapse should have been anticipated in light of his history of drug abuse. While the Court agrees that Delacruz likely would have greatly benefited from a drug treatment program during his furlough, he has not shown how the lack of such support constitutes an extraordinary and compelling reason warranting release. To the extent Delacruz relies on the fact that he had no new arrests and maintained steady employment, that is the very least that should have been expected of him. However, he committed several violations. Moreover, rehabilitation, standing alone, cannot constitute an extraordinary and compelling reason warranting a sentence reduction. *See, e.g.*, *United States v. Lopez*, No. 10 Cr. 798 (PAC), 2021 WL 2821149, at *3 (S.D.N.Y. July 7, 2021) (denying compassionate release where defendant earned a degree, had a clean disciplinary record, and submitted letters of support from family, friends, BOP staff, and fellow inmates).

### B. The Remaining Section 3553 Factors

Additional factors under 18 U.S.C. § 3553(a) also counsel against release at this time. Judge Forrest granted Delacruz a downward variance from a guidelines range of 70 to 87 months, and sentenced him to 60 months. Doc. 27 at Tr. 26:1–4.[5] Delacruz has not

---

[4] The BOP's efforts to vaccinate inmates undermine Delacruz's contention that the BOP is unable to control the risk of COVID-19 at FCI Danbury due to social distancing challenges. Doc. 34 at 12–13. According to the BOP, FCI Danbury currently has no active COVID-19 cases among inmates or staff. *See* COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited April 7, 2022). Moreover, as of April 7, 2022, 900 of the 1,048 total inmates at FCI Danbury had been fully vaccinated. *See* COVID-19 Vaccine Implementation, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited April 7, 2022).

[5] Although Delacruz refers to a guidelines range of 57 to 71 months, it is not clear where he gets these numbers from. Doc. 34 at 3.

shown any reason that the sentence imposed by Judge Forrest is no longer sound.  As set forth above, Delacruz's sentencing determination was decided with due consideration of the factors identified in his motion, including his need for drug treatment, his family support and the needs of his daughter, the nature of his prior convictions, and the underlying offense.

In addition to the aforementioned factors, Delacruz asks that the Court consider his conduct after the imposition of his sentence, including his completion of inmate education courses (Doc. 33-1, Ex. E), lack of infractions at FCI Danbury, and record of good behavior.  However, "rehabilitation alone cannot support a motion for compassionate release," when extraordinary and compelling reasons have not been established.  *See United States v. Walden*, No. 96 Cr. 962 (LAK), 2020 WL 7870670, at *4 (S.D.N.Y. Dec. 31, 2020).  Moreover, while the Court commends Delacruz's efforts at and commitment to rehabilitation, it notes that during his furlough, he tested positive for alcohol and drug use on two occasions, and was found in an unauthorized area of the residential reentry center on one occasion according to the Government.  Following his remand, Delacruz was sanctioned for smoking in the shower.  Therefore, the remaining Section 3553 factors weigh against release.

### IV.    CONCLUSION

For the reasons discussed above, Delacruz's motion for compassionate release is DENIED.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 33.

It is SO ORDERED.

Dated:   April 8, 2022
         New York, New York

_____
Edgardo Ramos, U.S.D.J.